UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
REGINA LEWIS,

                Plaintiff,

      -against-

REGINA ELDRIDGE,

                Defendant.
------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 4/27/16

13-cv-01485 (ALC)

**OPINION AND ORDER**

ANDREW L. CARTER, JR., United States District Judge:

*Pro se* plaintiff Regina Lewis brings suit against Regina Eldridge, Associate Warden of the Metropolitan Correctional Center in New York, alleging violations of her Fourth and Eighth Amendment rights.[1] Before the Court is Eldridge's motion for summary judgment on the grounds that Plaintiff did not administratively exhaust her claims, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, *et seq*. For the reasons stated below, Defendant's motion is granted and summary judgment is entered in Defendant's favor.

## BACKGROUND

I.    **Factual Background**

As discussed at greater length below, Defendant moves for summary judgment solely on the basis of Plaintiff's alleged failure to exhaust her administrative remedies, rather than on the merits of her claims. Both parties submitted materials outside the pleadings related to Plaintiff's alleged failure to exhaust. The Court finds it proper to rule on Defendant's motion for summary judgment and thus considers materials outside the pleadings. Accordingly, the facts alleged herein are drawn from Plaintiff's Complaint and the outside materials submitted by the parties.

---

[1] Plaintiff has separately filed suit against Deputy United States Marshal Eric Weiss, alleging violations of her Fourth and Fifth Amendment rights. *See Lewis v. Weiss*, No. 12 Civ. 7242 (ALC) (S.D.N.Y.). However, this Opinion relates only to her suit against Eldridge.

1

### a. February 27, 2013, Incident

Defendant is an Associate Warden at the Metropolitan Correctional Center New York ("MCC"), a facility operated by the federal Bureau of Prisons ("BOP"). (Scannell-Vesella Decl., ECF No. 28, ¶ 3.) As relevant here, Plaintiff was housed at MCC from January 11, 2013, to March 13, 2013. (*Id.* ¶ 4.) Plaintiff was under Psychological Observation at MCC from February 27, 2013, to March 13, 2013. (*Id.* ¶ 9.) Plaintiff was then housed at the Metropolitan Detention Center Brooklyn ("MDC") from March 13, 2013, to May 28, 2013. (*Id.* ¶ 10.) From March 13, 2013 to March 20, 2013, she was housed in the Special Housing Unit, and from March 21, 2013, to May 28, 2013, she was housed at MDC in general population. (*Id.* ¶ 10.)

Plaintiff alleges that the following took place on Wednesday, February 27, 2013, at around 8:00 a.m.: Defendant entered Plaintiff's cell, jumped on top of Plaintiff, placed her knee on Plaintiff's lower back, grabbed Plaintiff's hair, and ripped off Plaintiff's scarf. (Compl., ECF No. 1, 4.) Defendant then exited the cell and pushed an alarm, and as a result, several officers arrived at Plaintiff's cell. (*Id.*) Plaintiff was then instructed to walk to the isolation observation room, and when Plaintiff stated that she could not do so due to pain, Defendant and another individual put Plaintiff on the ground, cuffed Plaintiff's hands behind her back, and dragged Plaintiff off her bunk and onto a stretcher. (*Id.*) At that point, Plaintiff was moved to the medical unit. (*Id.*) In the medical unit, Plaintiff spoke with a psychologist, and reported a narrative of events substantially similar to that contained in her complaint. (*See* Exhs. B and C, Scannell-Vesella Decl.) A psychologist in the unit informed Plaintiff that Defendant did not have authority to "place inmates on psych." (*Id.*)[2]

---

[2] As docketed, Plaintiff's complaint includes three separate filings: (1) a complaint against "Metropolitan Corr. Fac." and three individual inmates; (2) the instant complaint against Defendant; and (3) a letter to a judge in an earlier-filed civil case. Because the claims against all defendants named in the first complaint have been dismissed, this Opinion addresses only the allegations and claims raised in the second complaint.

### b. Administrative Process

The BOP has established a four-step process, known as the Administrative Remedy Program ("ARP") through which inmates may seek review of issues relating to almost all aspects of their confinement. (Scannell-Vesella Decl. ¶ 11.) The ARP was in existence and in operation at both MCC and MDC at the time of Plaintiff's confinement in those facilities in 2013. (*Id.*) At both MCC and MDC, inmates are made aware of the ARP through the Admission and Orientation Manuals, which are distributed upon admission to each facility. (*Id.* ¶¶ 14-15.) An inmate's initial grievance form filed at the first step of ARP is not recorded in SENTRY, the BOP's computerized database, but any submissions with respect to the final three steps are recorded in SENTRY. (*Id.* ¶¶ 3(a), 16.)

SENTRY records reflect that Plaintiff filed or attempted to file three Requests for Administrative Remedy ("BP-9s") and one Central Office Administrative Appeal "("BP-11") over the course of her incarceration with the BOP. (Scannell-Vesella Decl. ¶ 17; Exh. F, Scannell-Vesella Decl..) Per the records, Plaintiff filed one of the BP-9s and the BP-11 prior February 27, 2013, incident at the heart of this action. (Scannell-Vesella Decl. ¶ 18(a); Exh. F at 2.) Of the remaining BP-9s, one involved Plaintiff's attempt to obtain the address and telephone number of another inmate while she was housed at a BOP facility in Brooklyn, and the other involved an incident report and BOP psychology staff and occurred while she was housed at a BOP facility in Texas. (Scannell-Vesella Decl. ¶ 18(b); Exh. F at 3.)

Though no grievances related to the February 27, 2013, incident are recorded in SENTRY, Plaintiff affirms, "I did file grievances the defendant is just not mentioning or

disclosing them." (Pl.'s Aff., ECF No. 30, ¶ 3.) According to Plaintiff, she was housed in the mental health observation unit at the time of the incident in question and was barred from making legal calls, having legal visits, and having access to legal mail. (Pl.'s Sept. 4, 2015, Ltr., ECF No. 38, 1.) However, other inmates provided Plaintiff with pens and the administrative grievance forms, and she describes her efforts to grieve her complaint as follows:

> "I began with a cop-out, then handwritten letters to the administrative offices including the Captain. I got no response. I was never interviewed by the [Prison Rape Elimination Act] coordinator. . . . I was simply ignored and remained in 24 hours lockdown . . . all of my grievances are recorded in the log books that were provided to the suicide watch inmates and I do have copies of all the grievances and administrative forms I could get. Neither my social worker nor my case manager ever inquired of me or came to see me or would provide me with assistance in completing the administrative process. Since I am incarcerated I have no access to the records. . ."

(Pl.'s Sept. 4, 2015, Ltr., 1-4.)

Plaintiff commenced the instant action on March 7, 2013, eight days after the incident in question. (ECF No. 1.)

## II.   Procedural Background

Plaintiff filed this action on March 7, 2013, bringing claims against the "Metropolitan Corr. Facility," three individual inmates, the federal Bureau of Prisons, and Regina Eldridge. (ECF No. 1.) The Court construes her complaint to bring claims under the Fourth and Eighth Amendments. (*See* Compl.; *see also* Pl.'s Feb. 17, 2016, Ltr., ECF No. 36.) On May 14, 2013, this Court entered an Order *sua sponte* dismissing the claims against the individual inmates, the "Metropolitan Corr. Facility," and the federal Bureau of Prisons. (ECF No. 10.)

On November 17, 2015, this Court granted Defendant leave to file a motion to dismiss. (ECF NO. 24.) On December 16, 2016, Defendant filed a motion styled as a motion for summary judgment. (ECF No. 27.) Plaintiff filed an affidavit in opposition on December 30, 2015, objecting that a motion for summary judgment was premature and disputing the merits of

4

Defendant's motion. (ECF No. 30.) She had also earlier filed a letter, detailing her attempts to exhaust her claims. (Pl.'s Sept. 4, 2015, Ltr.)

## APPLICABLE LAW

### I.   The PLRA Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides:

> "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997(e)(a). This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it is required "regardless of the relief offered through administrative procedures," meaning that even where a prisoner wishes to bring suit seeking relief not available through the administrative procedures, she must still exhaust her claim through that process. *Booth v. Churner*, 532 U.S. 731, 741 (2001). While "litigants . . . who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a), and, therefore, need not satisfy the exhaustion requirements of this provision," *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999), "section 1997e(a) is applicable" where the plaintiff "was a confined prisoner *at the time he filed his lawsuit*[]." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (emphasis added).

"Proper exhaustion" requires "using all steps that the agency holds out, and doing so properly," by "both completing the administrative review process in accordance with the applicable procedural rules, and providing the level of detail necessary in a grievance to comply with the grievance procedures." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting

5

*Woodford v. Ngo*, 548 U.S. 81, 88, 90; *Jones v. Bock*, 549 U.S. 199, 218 (2007)) (internal citations and quotation marks omitted).

Inmates seeking to file claims arising out of their confinement in federal facilities must proceed through a four-step process:

> "[1] The first step is to submit a BP-8, or informal grievance, to prison staff. [2] If the inmate is unable to resolve the complaint informally, the inmate must file an Administrative Remedy Request, or BP-9, with the Warden, who has 20 days to respond. [3] The inmate may then appeal the Warden's decision to the Regional Director, who has 30 days to respond. [4] If the inmate is still not satisfied, he may appeal that decision to the General Counsel, who has 40 days to respond. If an inmate does not receive a response or notice of extension within the allotted time, the inmate may consider the absence of a response to be a denial at that level."

*Baez v. Kahanowicz*, 469 F. Supp. 2d 171, 178 (S.D.N.Y. 2007), *aff'd*, 278 F. App'x 27 (2d Cir. 2008); *see also* 28 C.F.R. §§ 542.10-542.18.

In narrow circumstances, however, the exhaustion bar may not apply. The Second Circuit has recognized three categories of "caveats": first, when "administrative remedies are not available to the prisoner;" second, when "defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense;" and third, when "special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). A subsequent decision by the Supreme Court in *Woodford v. Ngo*, 548 U.S. 81, 126 (2006) has called into question the continued vitality of these exceptions, but the Second Circuit has as yet declined to address that question. *See, e.g., Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) ("We too decline to reach the issue, concluding that, even under pre-Woodford caselaw, Calloway has failed to establish that defendants are estopped from raising exhaustion as a defense or that special circumstances excuse her failure to exhaust."); *Ruggiero*, 467 F.3d at

6

175 ("We need not determine what effect *Woodford* has on our case law in this area, however, because Ruggiero could not have prevailed even under our pre-*Woodford* case law.").

## II. Conversion to Motion for Summary Judgment

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Therefore, "[t]he Court may only grant a motion to dismiss based on failure to exhaust if non-exhaustion is clear from the face of the complaint." *Rodriguez v. Warden, Metro. Corr. Facility*, No. 13 Civ. 3643 (PAC), 2015 WL 857817, at *3 (S.D.N.Y. Feb. 27, 2015); *see also McCoy v. Goord*, 255 F.Supp.2d 233, 251 (S.D.N.Y. 2003) ("If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted.").

However, if non-exhaustion is not clear from the face of the complaint:

> "a defendant's motion to dismiss should be converted . . . to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused."

*Roland v. Smith*, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012) (quoting *McCoy*, 255 F. Supp. 2d at 251) (alteration in original); *see also McIntosh v. United States*, No. 14 Civ. 7889 (KMK), 2016 WL 1274585, at *13 (S.D.N.Y. Mar. 31, 2016) (same); *Rambert v. Mulkins*, No. 11 Civ. 7421 KPF, 2014 WL 2440747, at *6 (S.D.N.Y. May 30, 2014) (same); *Smalls v. Jummonte*, No. 08 CIV 4367 DAB, 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010) (same).

The court must afford "prior notice to the parties before converting [a] motion to dismiss into a motion for summary judgment." *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983). "Notice is particularly important when a party is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues." The

7

plaintiff "must be afforded the opportunity to respond to Defendants' evidence with his own, if any." *Smalls*, 2010 WL 3291587, at *3 (citation omitted). "Plaintiff may, for example, respond with evidence of his efforts to exhaust, and/or evidence that (a) administrative remedies were unavailable, (b) he was inhibited from exhausting available remedies by one or more Defendant's actions, or (c) special circumstances exist that justify his failure to comply with the exhaustion requirements." *Id.*

### III. Standard for Summary Judgment

The party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those facts that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted).

In deciding a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). If the court recognizes any genuine issue of material fact, summary judgment is improper, and the motion must be denied. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof, the non-moving party must then set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c). The non-moving party opposing a properly supported summary judgment motion "may not rest upon mere allegation[s] or denials of his pleading." *Anderson*, 477 U.S. at 256. Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment," *id.* at 247 (emphasis in original), and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 50 (internal citations omitted). Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

Finally, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," *Harris v. Miller*, --- F.3d ---, No. 14-2957, 2016 WL 963904, at *4 (2d Cir. Mar. 15, 2016) (quoting *Tracy v. Freshwater,* 623 F.3d 90, 101 (2d Cir. 2010)) (alteration omitted). This is so "particularly where motions for summary judgment are concerned." *Id.* (quoting *Jackson v. Fed. Express,* 766 F.3d 189, 195 (2d Cir. 2014)). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted).

## DISCUSSION

### I. The Court Will Consider Defendant's Motion for Summary Judgement

Though the Court granted Defendant leave to file a motion to dismiss, rather than a motion for summary judgment, the Court finds it proper to consider the motion for summary judgment, limited to the narrow issue of exhaustion.

As an initial matter, non-exhaustion is not clear from the face of the complaint. Plaintiff's complaint is silent as to any efforts she undertook to exhaust her claims regarding the February 27, 2013, incident. "If exhaustion is not an affirmative pleading requirement, then plaintiff cannot be penalized for what [she] does not say in [her] pleadings about [her] efforts to exhaust." *Woodhouse v. City of Mount Vernon*, No. 13 Civ. 189 (ALC), 2016 WL 354896, at *8 (S.D.N.Y. Jan. 27, 2016) (internal alterations and citation omitted). However, Defendant has provided evidence outside the pleadings to support her affirmative defense that Plaintiff failed to exhaust her claims through the BOP's established grievance procedure. Defendant submits a sworn affidavit from Stephanie Scannell-Vessella, a staff attorney with the United States Department of Justice, Federal Bureau of Prisons. (ECF No. 28.) With her affidavit, she provides BOP's records reflecting the grievances filed by Plaintiff over the course of her incarceration with the BOP. In addition, Defendant served upon Plaintiff a statement apprising her of her obligations in opposing a motion for summary judgment, pursuant to Local Rule 12.1. (ECF No. 31.) Plaintiff, in turn, submitted an affirmation and a letter in which she described her efforts to exhaust. (ECF Nos. 30, 38.)

Because non-exhaustion is not apparent on the face of the complaint, because the *pro se* Plaintiff has received proper notice, and because both parties have submitted materials outside the pleadings in connection with this motion, the Court will consider Defendant's motion for

summary judgment on the narrow question of exhaustion and will consider materials beyond the scope of the pleadings.

## II.     Failure to Exhaust

Plaintiff must satisfy the PLRA exhaustion requirement because she was incarcerated at the time she filed her complaint. *See Berry*, 366 F.3d at 88. Yet based on the timing of the incident in question and the filing of this suit, it is clear that Plaintiff did not properly exhaust her claim prior to filing her suit.

The alleged incident between Plaintiff and Defendant took place on February 27, 2013. Following the incident, Plaintiff claims to have filed an informal grievance, or a "cop-out." (Pl.'s Sept. 4, 2015, Ltr., 1.) As Defendant acknowledges, these informal grievances are not logged in SENTRY, and so Defendant provides no documentation regarding the filing of an informal grievance. (Scannell-Vesella Decl. ¶ 16.) Based on Plaintiff's uncontroverted evidence, it appears that Plaintiff completed step one of the four-step ARP process.

The same cannot be said of the remaining three steps. After filing her informal grievance, to comply with the BOP's ARP procedure, Plaintiff was next required to submit a BP-9 to the facility warden. *See* 28 C.F.R. § 542.14. She was required to file the BP-9 within 20 days of the incident, and the warden was required to respond within 20 days of the submission of the BP-9. *Id.* If Plaintiff did not receive a response within 20 days, she would be permitted to consider the absence of a response to be a denial and to move to the third step: appealing the warden's decision to the Regional Director. *See Baez*, 469 F. Supp. at 178. If the Regional Director did not respond within 30 days, Plaintiff would again be permitted to consider the absence of the response a denial and to appeal, this time to the General Counsel. *Id.* If the General Counsel did

11

not respond within 40 days, Plaintiff would be permitted to consider the absence of response to be a denial, and thus would have exhausted the ARP. *Id.*

Here, Plaintiff claims that she submitted "handwritten letters to the administrative offices, including the Captain." (Pl.'s Sept. 4, 2015, Ltr., 1.) But the SENTRY records do not show any grievances filed in relation to the February 27, 2016, incident. (¶ 17-18.) Plaintiff argues that she "did file grievances [and] the defendant is just not mentioning or disclosing them." (Pl.'s Aff., ¶ 3.) Yet even crediting this assertion and assuming that the letters to the administrative offices corresponded to the later steps of the ARP procedure, Plaintiff could not have exhausted the administrative review process by the time she filed the complaint. Assuming Plaintiff filed a BP-9 on February 27, 2013—the very date of the incident—she had to wait twenty days, or until March 19, 2013, before she could take any lack of response from the warden to be a denial. *See* 28 C.F.R. § 542.14. Thus, while Plaintiff asserts that she "got no response" and "was simply ignored" (Pl.'s Sept. 4, 2015, Ltr., 1), the regulations did not yet permit her to consider the lack of response a denial by the time she filed this action on March 7, 2013. Taking all of Plaintiff's assertions as true, she had not yet exhausted the administrative proceedings, because she had not completed the second step of the four-step ARP procedure by the time she commenced her suit.

### III. Exceptions to Exhaustion

However, Plaintiff's failure to exhaust is not the end of the inquiry. In *Hemphill*, the Second Circuit recognized that the exhaustion bar may not apply in three situations:

> "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement."

*Ruggiero*, 467 F.3d at 175 (citing *Hemphill*, 380 F.3d at 686). This Court need not consider the effect of the Supreme Court's decision in *Woodford* on the *Hemphill* exceptions, as Plaintiff does not establish that any of the exceptions apply to her.

First, Plaintiff does not demonstrate that administrative remedies were unavailable to her. Plaintiff states that she was in punitive segregation, called Mental Health Observation, where she was on lock-down and without access to legal resources. (Pl.'s Sept. 4, 2015, Ltr., 1.) However, she also states that "several of the suicide watch inmates broke the rules and allowed me to use pens and provided me with the administrative forms that were available without being questioned." *Id.* Further, Defendant provides evidence that "inmates who are housed in the Special Housing Unit . . . or are under Psychological Observation have access to the ARP as a matter of policy and practice." (Scannell-Vesella Decl. ¶ 19.) Plaintiff provides no evidence to contradict that assertion. Based on her own statements and on Defendant's submissions, there is no evidence that administrative remedies were unavailable to Plaintiff.

Second, Plaintiff neither alleges nor demonstrates that Defendant has forfeited her right to raise the affirmative defense of exhaustion. Defendant has not waived the defense because she in fact asserts it. Further, though "a defendant may be estopped from asserting non-exhaustion where he takes some action to inhibit an inmate from accessing available administrative remedies," *Rambert*, 2014 WL 2440747, at *12 (citation omitted), Plaintiff provides no evidence that Defendant took affirmative action to prevent Plaintiff from availing herself of the grievance procedures. *See Ruggiero*, 467 F.3d at 178 ("In our prior cases recognizing that defendants' actions may estop them from raising non-exhaustion as a defense, each prisoner alleged that defendants took affirmative action to prevent him from availing himself of grievance procedures."). While Plaintiff states, "I cannot be responsible for [Defendant's] co-workers who

13

covered up for her" (Pl.'s Sept. 4, 2015, Ltr., 4), this falls short of alleging that Defendant herself took affirmative action to prevent Plaintiff from completing the grievance procedures. Thus, the second exception does not apply.

Finally, Plaintiff does not demonstrate that any special circumstances excuse her failure to exhaust. "When considering whether special circumstances exist, a court should look "at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." *Rambert*, 2014 WL 2440747, at *13 (S.D.N.Y. May 30, 2014) (quoting *Brownell v. Krom*, 446 F.3d 305, 312 (2d Cir. 2006)) (internal quotation marks omitted). "Special circumstances may exist where the prison grievance regulations are confusing and the prisoner relies upon a reasonable interpretation of those regulations." *Id.* (quoting *Chavis v. Goord*, 333 F. App'x 641, 643 (2d Cir. 2009)) (alteration omitted). Here, Plaintiff does not allege that she misunderstood or was confused by the grievance process, and indeed, there is evidence that she successfully filed at least four other grievances, pursuing them to at least the second step of administrative review. She shows no special circumstances to excuse her failure to exhaust. Because no exception applies, Plaintiff's failure to exhaust the administrative review process is fatal to her suit.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Dated:** April 27, 2016
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**